# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| JEFFERSON L. MILLER, | ) | |
| | ) | Case No. CV05-469-S-LMB |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM DECISION** |
| vs. | ) | **AND ORDER** |
| | ) | |
| JEFF CONWAY, Warden for Idaho | ) | |
| Correctional Center; DANIEL PRADO, | ) | |
| Assistant Warden for ICC; EVELYN | ) | |
| HERNANDEZ, Assistant Warden for | ) | |
| ICC; JOE SANDS, Unit Manager for | ) | |
| ICC; JESUS GUTIERREZ, Sergeant | ) | |
| for ICC; JUSTIN ACOSTA, Counselor | ) | |
| for ICC; MRS. BLAKELY, Guard for | ) | |
| ICC; BRIAN DOSER, Guard for ICC; | ) | |
| MS. S. HUNSAKER, Guard for ICC; | ) | |
| JOANNE ADAMS, Librarian for ICC; | ) | |
| JOHN or JANE DOE, employees of ICC; | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pending before the Court are Defendants' Motion for Summary Judgment (Docket No.

46), Plaintiff's Motions for Leave to File Overlength Response and Supplemental Response

(Docket Nos. 67 & 81), Plaintiff's Motion to Amend Amended Complaint (Docket No. 68),

Plaintiff's Motion in Limine (Docket No. 69), Defendants' Motion for Extension of Time to File

Reply (Docket No. 72), Defendants' Second Motion for Leave to File Excess Pages (Docket No.

74), and Defendants' Motion to Withdraw Admissions (Docket No. 76).  All parties have

consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case

(Docket No. 56).  Having considered the Motions, Responses, and Replies, the Court concludes

that oral argument is unnecessary.  Accordingly, the Court enters the following Order.

**MEMORANDUM DECISION AND ORDER- 1**

# I.

## PRELIMINARY MOTIONS

**A.      Plaintiff's Motion in Limine (Docket No. 69)**

Plaintiff sent requests for admissions to Defendants.  Defendants' counsel's office misplaced the documents, which caused their responses to be late.  Plaintiff then filed a Motion in Limine, requesting that the Court deem the late responses "admissions" and deny the pending Motion for Summary Judgment on that basis.  Defendants argue that they should be permitted to withdraw the admissions because Plaintiff has not suffered prejudice.  Plaintiff alleges that he has suffered prejudice as a result of the late responses.

If a party fails to respond to requests for admissions in a timely fashion, they are deemed admitted.  *See* Fed. R. Civ. P. 36.  The Court may allow such admissions to be withdrawn if (1) "withdrawal would . . . facilitate presentation of the merits of [the] case," and (2) the party who obtained the admission [is not] prejudiced by the withdrawal."  *Hadley v. U.S.*, 45 F.3d 1345, 1348 (9th Cir. 1995).  In *Hadley*, the court explained:

> The prejudice contemplated by Rule 36(b) is not simply that the party who obtained the admission will now have to convince the factfinder of its truth. Rather, it relates to the difficulty a party may face in proving its case, *e.g.*, caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously deemed admitted.

*Id*. at 1348 (internal punctuation and citation omitted).

Plaintiff's and Defendants' requests raise two concerns.  First, Plaintiff appears to be seeking to bypass the merits of a summary judgment motion on a technicality.  Second, Defendants' suggestion would deprive Plaintiff of an opportunity to have the true answers and any follow-up discovery considered by the Court on summary judgment.  Justice is better served

**MEMORANDUM DECISION AND ORDER- 2**

when cases are decided on the merits, rather than on technicalities.  In addition, the courts favor

allowing the parties to file dispositive motions, which serve to efficiently dispose of cases or

claims where the record shows that there is no material issue of fact and the moving party is

entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.  Finally, fair play demands that

each party have ample time to conduct discovery and not be prejudiced by another party's failure

to return discovery responses on time.

Consequently, Plaintiff's Motion in Limine shall be treated as a Rule 56(f) request.  The

Motion for Summary Judgment will be conditionally denied as to those claims potentially

affected by Plaintiff's outstanding discovery, and only those claims that would not be affected by

Plaintiff's discovery will be assessed here.  Plaintiff shall be allowed an additional sixty (60)

days to engage in any follow-up discovery on Defendants' responses to the requests for

admissions.  Within ninety (90) days, Plaintiff shall file a final supplemental response to the

Motion for Summary Judgment, providing facts in the form of affidavits and exhibits showing

that there is a genuine issue of material fact on the remaining claims.  Then the remaining claims

will be considered.

**B.     Plaintiff's Request for Non-Parties to Supplement Subpoena Responses (Docket Nos. 78 & 80)**

Plaintiff was previously permitted to send subpoenas duces tecum at public expense to

the Ada County Clerk of Court and Ada County Prosecutor's Office.  He is dissatisfied with the

responses received.

Federal Rule of Civil Procedure 26(b)(1) provides, in pertinent part, that "parties may

obtain discovery regarding any matter, not privileged, which is relevant to the subject matter

involved in the pending action."  Federal Rule of Civil Procedure 45(c)(1) requires a party

**MEMORANDUM DECISION AND ORDER- 3**

issuing a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena," and the courts are charged with "enforc[ing] this duty."

In his subpoenas, Plaintiff sought information from the Ada County Prosecutor's Office and the Ada County Clerk of Court showing that Defendants Hunsaker and Doser corresponded with these offices about the post-conviction case of Inmate Panales-Nava. Plaintiff believes this information will assist him in establishing that Defendants issued, and found him guilty of, a Disciplinary Offense Report (DOR) in retaliation for Plaintiff helping Inmate Panales-Nava allege in his state post-conviction action that many violent inmate attacks had occurred at the Idaho Correctional Center ("ICC").

After reviewing the briefing and evidence presented regarding Plaintiff's claims of retaliation, the Court concludes that Plaintiff's retaliation claims appear to be based on speculation. Plaintiff, a fairly sophisticated inmate litigant, has no corroborating evidence whatsoever of retaliation, despite having had a long period of time to engage in discovery. *See Plaintiff's Deposition Transcript*, 80:16-25 & 81:1-24 (Docket No. 46-14).

While Plaintiff has been permitted to obtain some information via subpoenas, Plaintiff will not be allowed to proceed further on what appears to be a fruitless fishing expedition for telephone records and e-mail messages that Defendants allegedly sent the Ada County Clerk of Court or Ada County Prosecutor on an unrelated case, the Panales-Nava matter, without any other shred of corroborating evidence of a retaliation scheme. Allowing Plaintiff's request would pose an undue burden and expense on Ada County in light of the apparent lack of merit of Plaintiff's claims. Therefore, Plaintiff's request for additional records is denied.

**MEMORANDUM DECISION AND ORDER- 4**

**C.**     **Plaintiff's Motion to Amend Amended Complaint (Docket No. 68)**

Plaintiff seeks leave to amend his Amended Complaint to add official capacity claims against Defendants.  Defendants have not opposed the Motion.  Claims asserted under the ADA and RA are treated as official capacity claims because no individual capacity claims under these statutes exist.  Therefore, for good cause, the Motion is granted.

**D.**     **Defendants' Motion to File an Overlength Brief (Docket No. 74) and Plaintiff's Motions to File Excess Pages (Docket Nos. 67 & 81)**

Due to the multiple claims filed in this case, Defendants will be allowed to file an overlength Reply in support of the pending Motion for Summary Judgment and Plaintiff to file an overlength Response and Supplemental Response.

**E.**     **Defendants' Motion for Extension of Time to File Reply (Docket No. 72)**

Good cause appearing, the Court grants Defendants' Motion for Extension of Time to File a Reply in Support of their Motion for Summary Judgment and Defendants' Reply will be deemed to be timely filed.

## II.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**A.**     **Standard of Law Governing Summary Judgment**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**MEMORANDUM DECISION AND ORDER- 5**

In a motion for summary judgment, the moving party bears the "initial burden of identifying for the court those portions of the record which demonstrate the absence of any genuine issues of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986)). If the moving party points to portions of the record demonstrating that there appears to be no genuine issue of material fact as to claims or defenses at issue, the burden of production shifts to the non-moving party. To meet its burden of production, the non-moving party "may not rest upon the mere allegations contained in his complaint, but he must set forth, by affidavits, exhibits or otherwise, specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; *see T.W. Electric Serv.*, 809 F.2d at 630 (internal citation omitted).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. All inferences that can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted).

Rule 56(c) requires the Court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

**MEMORANDUM DECISION AND ORDER- 6**

**B.**     **Discussion of November 2003 Incident**

The following undisputed facts are material to Plaintiff's claims arising from the

November 2003 library incident involving Defendant JoAnn Adams.

1.     Material Facts

Idaho Department of Corrections ("IDOC") Directive No. 405.02.01.001 (Courts

Directive) provides that (1) inmates may provide legal assistance to other inmates only in their

own housing units; (2) inmates must be in possession of their own legal materials at all times; (3)

inmates may not possess another inmate's legal materials; (4) both the inmate providing the legal

assistance and the inmate receiving assistance must be physically present during the assistance;

and (5) an inmate may not barter his services by charging or receiving anything of value in

exchange for assisting another with his legal work.  *Affidavit of Kevin Burnett*, ¶ 4 & Exhibit A

(Docket No. 46-10).

On November 20, 2003, Defendant JoAnn Adams was employed by Corrections

Corporation of America ("CCA") as the librarian for the ICC, a private prison housing inmates

in the custody of IDOC.  *Affidavit of JoAnn Adams*, ¶ 2 (Docket No. 46-5).  Adams overheard

Plaintiff discussing inmates' legal cases in the ICC library.  *Id*. at ¶ 3; *Plaintiff's Statement of*

*Material Facts*, ¶ 1 (Docket No. 66).

Because the Courts Directive allows inmates to discuss their legal cases with each other

only in their assigned living units, Adams informed Plaintiff and the other inmates that they

could not discuss their legal cases in the library.  *Adams Affidavit*, ¶¶ 4-5 (Docket No. 46-5);

*Plaintiff's Statement of Material Facts*, ¶ 1 (Docket No. 66).  Plaintiff questioned Adams about

the policy and its enforcement, and Adams questioned Plaintiff about his allegation that she was

**MEMORANDUM DECISION AND ORDER- 7**

violating a policy. *Adams Affidavit*, ¶ 6 (Docket No. 46-5); *Plaintiff's Statement of Material Facts*, ¶ 1 (Docket No. 66). At that point, Plaintiff told Adams he did not care what policies she was violating, and the other two inmates told Adams they were not discussing law any more. *Plaintiff's Statement of Material Facts*, ¶ 1 (Docket No. 66). Adams instructed Plaintiff to leave the library because of his violation of the policy. *Adams Affidavit,* ¶ 6 (Docket No. 46-5); *Plaintiff's Statement of Material Facts*, ¶ 1 (Docket No. 66).

Adams did not issue a Disciplinary Offense Report (DOR) to Plaintiff or impose any other discipline. *Adams Affidavit*, ¶ 7 (Docket No. 46-5); *Plaintiff's Statement of Material Facts*, ¶ 1 (Docket No. 66). Plaintiff did not suffer any actual damage to his ability to pursue a legal case of his own as a result of Adams' actions. *Plaintiff's Deposition*, 53:1-7 (Docket No. 65-4).

2.   <u>Freedom of Speech</u>

Plaintiff alleges that Defendant Adams violated his right to free speech when she enforced the Courts Directive. It is undisputed that the Courts Directive prohibited inmates from discussing their legal cases in the library, and that Plaintiff and the other inmates were, according to the record, discussing their cases. Plaintiff argues that enforcement of the policy is unconstitutional.

The standards governing First Amendment claims of incarcerated citizens were outlined by the United States Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987). There, the Court examined the free speech issue in the context of prison officials prohibiting correspondence between inmates residing at different state institutions. The Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89. The Court identified four factors to

**MEMORANDUM DECISION AND ORDER- 8**

consider when determining whether a regulation is valid: (1) whether there is a "rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether "there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether "ready alternatives" exist.  482 U.S. at 89-90.

In *Shaw v. Murphy*, 532 U.S. 223 (2001), the United States Supreme Court held that the *Turner* test applied to an inmate-to-inmate legal advice incident where the inmate giving legal advice asserted that a prison policy violated his First Amendment right to free speech. In *Shaw*, Inmate Murphy sent a letter offering legal advice to another inmate.  As a result, he was charged with various violations of prison rules.

The *Shaw* Court determined that inmates do not have a First Amendment right to provide legal assistance to other inmates.  *Id*. at 225.  The Court rejected the argument that inmates have a free-standing right to give legal advice "that enhances the protections otherwise available under *Turner*"; in other words, inmate-to-inmate correspondence containing legal advice is not entitled to receive any more First Amendment protection than correspondence without legal advice.  *Id*. at 225 & 228.  The *Turner* test, the Court decided, "does not accommodate the value of [the] content" of a communication, but concerns "only the relationship between the asserted penological interests and the prison regulation."  *Id*. at 230.

When performing a *Turner* analysis, a federal district court must review both (1) the facial validity of the regulation under the four *Turner* factors, and (2) whether the regulation was unconstitutional as applied to the inmate by examining "whether applying the regulation to [the]

**MEMORANDUM DECISION AND ORDER- 9**

speech . . . was rationally related to the legitimate penological interest asserted by the prison."
*Hargis v. Foster*, 312 F.3d 404, 410 (9th Cir. 2002).  In other words, "[i]n the posture of a
motion for summary judgment, the question is whether a jury could reasonably conclude that
prison officials acted unreasonably in applying the DOC policy to the Plaintiff's [exercise of free
speech] in light of the asserted penological interests."  *Clark v. Mason*, 2007 WL 2417154, at *2
(D. Wash. 2007).

 Defendants argue that the purpose of the regulation that inmates assist one another in
their own housing units is that correctional officers are better equipped for monitoring and
enforcing inmate assistance than a librarian, who must be focused on assisting other inmates and
facilitating their access-to-court needs.  *Defendants' Memorandum*, at p. 15 (Docket No. 46-3);
*Burnett Affidavit*, ¶ 6 (Docket No. 46-10).  They also argue that restricting inmates to gathering
in areas designed to facilitate inmate meetings helps the prison maintain the safety and security
of staff and other inmates.  *Defendants' Memorandum*, at p. 15 (Docket No. 46-3); *Burnett
Affidavit*, ¶ 7 (Docket No. 46-10).

As to the first *Turner* factor, clearly, there is a rational connection between the prison
regulation at issue and the supervisory and security interests set forth by Defendants.  The *Shaw*
Court noted that "it is indisputable that inmate law clerks are sometimes a menace to prison
discipline and that prisoners have an acknowledged propensity to abuse both the giving and the
seeking of legal assistance."  532 U.S. at 231 (internal citation and punctuation omitted).

As to the second factor, the regulation does not ban all inmate meetings, but allows for
alternative means of exercising the right in areas that are supervised and secure.  Third, requiring
the librarian to supervise inmate meetings or requiring additional correctional officers to

**MEMORANDUM DECISION AND ORDER- 10**

supervise the library would shift the allocation of prison resources from the common areas in the housing units, designed for inmate meetings, to the library, and would detriment the interests of inmates seeking to obtain access-to-court help from the librarian.  Fourth, ready alternatives exist, given that inmates are free to meet in the housing units.  Because the regulation meets the *Turner* test on its face, the Court now turns to whether there is a genuine issue of material fact as to whether the regulation was applied in an unreasonable manner.

Here, the policy was clear, and the librarian simply asked the inmates to follow the policy by discussing their legal matters only in their housing units.  There is no question that the inmates were not in their housing units, and there is no allegation that one of the inmates being assisted needed something specific from the library in an immediate manner (and if that were the case, the right would have to be asserted by the inmate with the need, not the inmate providing assistance).  Further, no disciplinary action was taken by the librarian, and no inmate suffered any access-to-the-court injury as a result of the librarian reminding the inmates of the policy.  Plaintiff also admits that he verbally challenged Adams, while the other inmates obeyed her, which is adequate reason for Adams to ask Plaintiff to leave the library (without punishment) to avoid any further disturbance.  Because a jury could not reasonably conclude that the librarian acted unreasonably in applying the place-specific inmate legal assistance policy to the Plaintiff's exercise of free speech in light of the supervisory and security interests asserted by the prison, Defendant Adams is entitled to summary judgment.

      3.    <u>Right to Peaceably Assemble</u>

For convicted prisoners, the fact of confinement itself necessarily limits their retained constitutional rights.  *See, e.g., Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979).  The United States

**MEMORANDUM DECISION AND ORDER- 11**

Supreme Court has held that an inmate's right to freedom of association "may be curtailed whenever the institution's officials, in the exercise of their informed discretion, reasonably conclude that such associations possess the likelihood of disruption of prison order or stability." *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 132 (1977); *Franklin v. Murphy*, 745 F.2d 1221, 1230 (9th Cir. 1984). Here, it is clear that the prison's decision to allow inmates to meet on legal matters only in supervised areas intended for inmate meetings is a matter of safety and security. As a result, Plaintiff's limited freedom of association rights have not been violated, and Defendant Adams is entitled to summary judgment on this claim.

4.    Due Process

Plaintiff was not punished, and, therefore he has not stated a *procedural* due process claim, which is the type of claim where he would assert that he was punished without reason or without an opportunity to be heard. Neither has Plaintiff stated facts arising to the level of a *substantive* due process violation, which requires a "government deprivation of life, liberty, or property." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998); *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 198 (2003).

In addition, the Supreme Court has instructed the federal courts that, whenever possible, they should analyze constitutional claims using an "explicit textual source of constitutional protection," such as the Fourth Amendment, rather than using "the more generalized notion of 'substantive due process'" under the Fourteenth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Under the *Graham* principle, Plaintiff's claim is more appropriately construed as a First Amendment claim than a Fourteenth Amendment substantive due process claim.

**MEMORANDUM DECISION AND ORDER- 12**

5.    Equal Protection

Plaintiff alleges that his equal protection rights were violated when he was asked to leave the law library and the other inmates were not asked to leave.  Under the Equal Protection Clause, "all persons similarly circumstanced shall be treated alike" by governmental entities. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920).  However, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147 (1940). Under a rational basis inquiry, in order to prevail on an equal protection claim, Plaintiff must demonstrate that he is similarly situated to others and is being treated in a disparate manner, and that there is no rational basis for the disparate treatment.  *More v. Farrier*, 984 F.2d 269, 271 (8th Cir. 1993).  Stated another way, prison officials need show only a rational basis for dissimilar treatment in order to defeat the merits of Plaintiff's claim.  *Id*.  Where a case "does not rise to the level of invidious discrimination proscribed by the Equal Protection Clause. . . , the federal courts should defer to the judgment of the prison officials." *More*, 984 F.2d at 272.

Here, Plaintiff admits that he challenged the librarian on her request that they not discuss their legal cases in the library, while the other inmates acquiesced to the request.  Because the inmates had different reactions to the request, Plaintiff cannot show that they were similarly situated.  Because safety and security is the purpose of the policy, Adams had a rational basis for asking the confrontational inmate to leave the library and allowing the non-confrontational inmates to remain.  Accordingly, Plaintiff's equal protection rights were not violated.

**MEMORANDUM DECISION AND ORDER- 13**

**C.     Discussion of December 14, 2003 DOR**

After a cell search on December 14, 2003, Plaintiff received a Disciplinary Offense

Report (DOR) for deceiving an officer and having another inmate's legal documents in his

possession.  The following undisputed facts are material to Plaintiff's claims arising from the

December 2003 DOR incident involving Defendants Sheri Hunsaker and Brian Doser.

1.     <u>Material Facts</u>

On December 14, 2003, Defendant Sheri Hunsaker performed a search of Plaintiff's cell

as part of her training program as a correctional officer in C-pod.  *Affidavit of Sheri Hunsaker*, ¶

3 (Docket No. 46-7).  During the search, Hunsaker found Inmate Hernandez's legal papers in the

possession of Plaintiff.  *Id*. at ¶ 5.  Hunsaker discussed with Plaintiff that his possession of

another inmate's legal documents was a violation of the Courts Directive.  *Id*. at ¶ 6.  Plaintiff

told Hunsaker that Inmate Hernandez "was in federal court."  *Id*.  Hunsaker thought Plaintiff

meant that Inmate Hernandez was physically at the federal court on that date; Plaintiff alleges

that he meant that Inmate Hernandez was in the process of pursuing a federal court action.  *Id*. at

¶ 7.  Plaintiff told Hunsaker that Hernandez lived in I-pod.  *Plaintiff's Statement of Material

Facts*, ¶ 13 (Docket No. 66).

When Hunsaker checked ICC records, she determined that Inmate Hernandez had not

gone to the federal court on that date.  As a result, Hunsaker issued a DOR to Plaintiff for (1)

making a false statement to an officer, and (2) violating the Courts Directive.  *Id*.  After she

wrote the DOR, Hunsaker had no further involvement in its processing and handling.  *Id*. at ¶ 8.

 Defendant Brian Doser was a sergeant at ICC, as well as the disciplinary hearing officer

(DHO).  Doser's duties as DHO are set forth in ICC Policy No. 15-100, which adopts IDOC

**MEMORANDUM DECISION AND ORDER- 14**

Directive No. 318.02.01.001 (DOR Directive).  *Affidavit of Brian Doser*, ¶¶ 3-4 (Docket No. 46-8).  The DOR Directive provides (1) that physical evidence is not to be presented at the hearing, but that the DHO may review the physical evidence prior to the hearing; (2) that the written DOR is evidence of the alleged offense, and it is not necessary to call the staff who wrote the DOR to authenticate it or testify as to its contents; and (3) live witnesses are not allowed at the DOR hearings, but witness testimony is allowed through written statements.  *Id*. at ¶ 8.  Plaintiff did not make a timely request for witnesses.  *Id*. at ¶ 9.

Doser's responsibilities as a DHO are to (1) conduct disciplinary hearings on DORs written by ICC staff members for rule violations committed by inmates; (2) make a determination of guilty or not guilty; and (3) impose appropriate sanctions if the inmate is found guilty.  *Id*. at ¶ 5.  The DHO has authority to classify each offense according to his discretion, with a Class A offense being the most severe and a Class C being the least severe.  *Id*. at ¶ 7.

On December 18, 2003, Doser conducted a hearing on the DOR Hunsaker had issued to Plaintiff.  He amended the DOR to delete the charge of violation of the Courts Directive because only one offense should be charged in each DOR, and it appeared that the charge of making a false statement to a staff member was the more serious offense.  *Id*. at ¶ 6.

At the hearing on the DOR, Plaintiff contended that Hunsaker had misunderstood him.  *Plaintiff's Statement of Material Facts*, ¶ 28.   Doser found Plaintiff guilty of the charged offense of making a false statement to Officer Hunsaker.  Doser assigned it a Class B violation because Plaintiff had some disciplinary history and had shown disregard for rules by having Inmate Hernandez's legal papers in his possession in violation of the Courts Directive.  *Id.* at ¶ 10.

**MEMORANDUM DECISION AND ORDER- 15**

When he occupied the DHO position, Doser attempted to impose sanctions for each of the three classifications of offenses in a consistent manner.  Plaintiff received a sanction of fifteen (15) days in segregation and twenty (20) extra duty hours, which was a typical sanction imposed for Class B violations.  The DOR Directive allowed up to forty (40) extra duty hours and privilege restrictions for up to sixty (60) days.  *Id*. at ¶ 12.

Defendant Doser's  DOR decision was affirmed by the reviewing authority.  *Id*. at ¶ 13. Plaintiff appealed the DOR finding of guilt and sanctions.  Defendant Warden Conway reviewed the appeal and affirmed the decision.  *Id*. at ¶ 14.  Plaintiff admits that he has no evidence that Defendant Doser treated him any differently from other inmates at ICC.  *Plaintiff's Statement of Material Facts*, ¶ 29 (Docket No. 66).

　　2.　Retaliation

Plaintiff alleges that Sergeant Doser and Captain Klein were angry with him because Plaintiff had assisted Inmate Panales-Nava with a state post-conviction case where Panales-Nava was alleging that many inmate-on-inmate violent assaults occurred at ICC.  *Plaintiff's Deposition* 78:2-25; 79:1-25.  Plaintiff admits that his only proof of his allegation that Doser or Klein told Hunsaker to search his cell because of his involvement in the Panales-Nava case is that Defendants failed to return their responses to his requests for admissions on time.  *Id*. at 80:16-25.  Because Plaintiff is being allowed additional discovery time to follow up on the responses, the Court will conditionally deny the Motion for Summary Judgment on this claim and reconsider it at a later date, as explained above.

**MEMORANDUM DECISION AND ORDER- 16**

3.      Freedom of Speech

Plaintiff's freedom of speech claim is subject to the *Turner* analysis.  As to the first factor, the regulation at issue is a prohibition against deceiving an officer.  As to the second factor, there is clearly a rational connection between the prison regulation and the legitimate governmental interest of keeping a safe and secure prison environment for inmates and staff.  Third and fourth, inmates have no constitutional right to deceive a correctional officer, and so the Court need not consider whether there are alternative means of exercising the right or what impact accommodation of the asserted constitutional right will have on the prison.  *See Turner v. Safley*, 482 U.S. at 89-90.

Having determined that the regulation is facially valid, the Court next reviews whether the regulation was unconstitutional as applied to the inmate; that is, whether application of the regulation to Plaintiff's speech was rationally related to the safety and security interest of the prison.  *Hargis*, 312 F.3d at 410.  Here, the Court looks at the totality of circumstances surrounding the speech.  Plaintiff was clearly in possession of another inmate's legal documents, and the correctional officer was seeking an answer to that question.  Whether the other inmates' legal documents were *federal* court documents rather than *state* court documents was an answer that was nonresponsive, diversionary, and irrelevant to the issue at hand -- which was that Plaintiff had the other inmate's legal documents in his possession without that inmate being present, a clear violation of the Courts Directive.  In addition, as discussed later in this Order, Plaintiff has admitted that he had bartered for his legal services in violation of yet another legitimate regulation.  Based upon the totality of the circumstances a jury could not reasonably conclude that prison officials acted unreasonably in applying the regulation to Plaintiff's

**MEMORANDUM DECISION AND ORDER- 17**

exercise of free speech in light of the asserted penological interests.  *See Clark v. Mason*, 2007 WL 2417154, at *2.  This is an instance in which free speech is necessarily curtailed by reason of one's conviction and incarceration.

      4.     <u>Access to Courts</u>

     Plaintiff alleges that his right to access the courts was violated by the confiscation of Inmate Hernandez's legal papers from him because he was using the papers as a model for his own federal habeas corpus case.  An inmate has a constitutional right to access the courts, *Bounds v. Smith*, 430 U.S. 817, 817, 821, 828 (1977), and may recover for denial of that right in a civil rights lawsuit if he or she can demonstrate that an actual injury occurred as a result of the alleged denial, meaning that "a nonfrivolous legal claim has been frustrated or was being impeded," *Lewis v. Casey*, 518 U.S. 343, 352-53 (1996). Here, because Plaintiff did not suffer an injury from this incident, his First Amendment access to the courts claim fails.  *See Plaintiff's Deposition*, 71:12 to 72:4  (Docket No. 46-14).

     The Court also rejects Plaintiff's other arguments made regarding his access to the courts claim.  Plaintiff has no constitutional right to assist another inmate in his legal work, as he has alleged.  *Shaw*, 532 U.S. at 1478-79.  In addition, Plaintiff had no right to have Hernandez's paperwork returned to him because he was not entitled to possess the paperwork of another inmate, and he has no standing to assert that Hernandez's legal paperwork should have been returned to Hernandez.

      5.     <u>Due Process - Liberty Interest Analysis</u>

     Plaintiff alleges that his due process rights were violated by Defendants Hunsaker and Doser regarding issuance and adjudication of the DOR.  Due process violations arising from

**MEMORANDUM DECISION AND ORDER- 18**

prison disciplinary actions are not always cognizable.  Rather, only claims involving a "liberty

interest" are actionable.  In *Sandin v. Conner*, 515 U.S. 472, 487 (1995), the Court examined

whether a prisoner had a liberty interest in not being confined in disciplinary segregation.  There,

the Court held that, in order for a district court to determine whether there is such a liberty

interest, it must analyze three factors:  (1) whether disciplinary segregation was essentially the

same as discretionary forms of segregation;  (2) whether a comparison between the plaintiff's

confinement and conditions in the general population showed that the plaintiff suffered no

"major disruption in his environment";  and (3) whether the length of the plaintiff's sentence was

affected.  *Id.*, 515 U.S. at 486-87.  If these factors are not met, a court may find that there is no

liberty interest in not being placed in disciplinary segregation, which results in a prisoner not

being entitled to sue prison officials for due process violations arising from the disciplinary

hearing.

In *Wilkinson v. Austin*, 545 U.S. 209 (2005), the United States Supreme Court

underscored the severity of the conditions required to meet the liberty interest test:

> For an inmate placed in OSP, almost all human contact is prohibited, even
> to the point that conversation is not permitted from cell to cell; the light, though it
> may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a
> small indoor room.  Save perhaps for the especially severe limitations on all
> human contact, these conditions likely would apply to most solitary confinement
> facilities, but here there are two added components.  First is the duration.  Unlike
> the 30-day placement in *Sandin*, placement at OPS is indefinite and, after an
> initial 30-day review, is reviewed just annually.  Second is that placement
> disqualifies an otherwise eligible inmate for parole consideration.  *Austin I*, 189
> F.Supp. 2d at 728.  While any of these conditions standing alone might not be
> sufficient to create a liberty interest, taken together they impose an atypical and
> significant hardship within the correctional context.  It follows that respondents
> have a liberty interest in avoiding assignment to OSP.  *Sandin*, supra at 483.

*Id*. at 223-24.


**MEMORANDUM DECISION AND ORDER- 19**

In Plaintiff's case, he was given fifteen (15) days in disciplinary segregation and twenty (20) hours of extra duty.  There are no allegations that the conditions of disciplinary segregation approached those described in *Wilkinson v. Austin*.  Plaintiff's sentence was not affected by the punishment.  As a result, the Court concludes that Plaintiff's confinement in segregation was not the type of atypical or significant deprivation from which a liberty interest would arise. Therefore, Plaintiff may not pursue any due process claims arising from the DOR or the DOR hearing.

  6.  <u>Due Process - "Some Evidence" Standard</u>

 A prisoner has a Fourteenth Amendment substantive due process right to be free from punishment which is arbitrary and capricious.  *See Burnsworth v. Gunderson*, 179 F.3d 771 (9th Cir. 1999).  Due process is violated when a prison disciplinary hearing board convicts an inmate of an offense "at which no shred of evidence of the inmate's guilt" was presented, even if inmate demonstrated no cognizable liberty interest.  *Id*. at 775.

 "The touchstone of due process is protection of the individual against arbitrary action of government."  *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974).  In a prison disciplinary setting, "the requirements of due process are satisfied if some evidence supports the decision" of the hearing officer.  *Superintendent Massachusetts Corr. Inst'n, Walpole v. Hill*, 472 U.S. 445, 455 (1985).  The standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of evidence."  *Hill*, 472 U.S. at 455.  Rather, the relevant inquiry centers on whether "there is *any* evidence in the record that could support the conclusion reached." *Id*. at 455-56 (emphasis added).

**MEMORANDUM DECISION AND ORDER- 20**

In Plaintiff's circumstance, DHO Doser relied upon the DOR report of Defendant Hunsaker and her credibility to make his guilty finding as to the charge that Plaintiff had made a false statement to an officer.  Plaintiff admits that he made the statement; he argues only that he did not intend the statement to be construed as Hunsaker understood it.  As explained above, however, in the context of asking Plaintiff why he possessed Inmate Hernandez's legal papers, Plaintiff's response that "Hernandez is in federal court" is nonresponsive, irrelevant, and diversionary, and, as such, can be classified as deceptive.  However, because this cause of action might be affected by the outstanding discovery issues, the Court will conditionally deny this portion of the Motion for Summary Judgment and reconsider it at a later date.

　　　　7.　　Equal Protection

Under a rational basis inquiry, in order to prevail on an equal protection claim, Plaintiff must demonstrate that he is similarly situated to others and is being treated in a disparate manner, and that there is no rational basis for the disparate treatment.  *More v. Farrier*, 984 F.2d 269, 271 (8th Cir. 1993).  Plaintiff admits that he has no evidence supporting his claim that he has been treated differently from other ICC inmates, and thus the claim is subject to summary judgment.

**D.　　Discussion of August 3, 2004 DOR Incident**

Plaintiff was issued another DOR on August 3, 2004.  A collateral consequence of this DOR was the confiscation and destruction of his typewriter.  The undisputed facts material to this claim are as follows.

**MEMORANDUM DECISION AND ORDER- 21**

1.      Material Facts

The Courts Directive provides: "No inmate shall charge or receive anything of value if he chooses to help another inmate with legal work. . . ."  *Affidavit of Justin Acosta*, ¶ 10 (Docket No. 46-9).  Inmate personal property is subject to the provisions of IDOC Directive No. 320.02.01.001 (Property Directive), which defines contraband, in part, as items that are being "used for purposes other than [their] original intention," as well as items that have been "loaned, sold, traded, borrowed, or given by one inmate to another." *Id*. at ¶¶ 3-5.  This Directive is repeated in the ICC Inmate Handbook.  *Id*. at ¶ 6.

Prison officials suspected that Plaintiff was involved in bartering.  *Id*. at ¶¶ 11-13.   After a cell search showed that Plaintiff had commissary items in his cell that he received in exchange for doing legal work for another inmate, Plaintiff was issued a DOR for bartering in violation of IDOC and ICC policy on August 3, 2004, by Defendants Gutierrez and Acosta.  *Plaintiff's Statement of Material Facts*, ¶ 32 (Docket No. 66).  Plaintiff admits that he bartered his services as a jailhouse lawyer, which included using his typewriter, in exchange for the commissary items.  *Id*.  Plaintiff was found guilty of the DOR and received sanctions of sixty (60) days commissary restriction and forty (40) extra duty hours.  *Id*.

The Property Directive provides that contraband property is to be confiscated and disposed of in accordance with the provisions of the Directive.  *Acosta Affidavit*, ¶ 9 (Docket No. 46-9).  Particularly, contraband property is not to be disposed of until the inmate has time to complete the grievance process.  *Id*. at ¶ 8.  The Property Directive specifies: (1) contraband shall be stored for forty-five (45) days; (2) the inmate shall be notified during the forty-five (45) day period that he can choose to donate, mail out, or have the property destroyed; (3) if the

**MEMORANDUM DECISION AND ORDER- 22**

property is to be mailed out, the inmate must pay for shipping costs; and (4) if no response is received, the contraband is considered abandoned and shall be treated as unauthorized property. *Affidavit of Deborah Blakely*, ¶ 4 (Docket No. 46-15).

Property of an inmate that has been used by the inmate in a bartering transaction is deemed to have been used for a purpose other than that which it was originally intended, and is deemed contraband. *Id.* at ¶ 7. Plaintiff's typewriter was confiscated as contraband pursuant to the Property Directive. *Id.* at ¶ 15. Plaintiff was given notice that he had forty-five (45) days in which to notify ICC of where he wanted the typewriter sent and to submit shipping costs to ICC. Plaintiff sent several Inmate Concern Forms to Defendant Blakely, requesting that the ICC pay for the shipping costs. The request was denied, and the typewriter was destroyed after forty-five (45) days pursuant to the Property Directive. *Plaintiff's Statement of Maternal Facts,* ¶ 32 (Docket No. 66); *Blakely Affidavit*, ¶¶ 4-11 (Docket No. 46-15). Plaintiff admits that he has no proof that he was treated differently from other inmates at ICC regarding destruction of his confiscated typewriter. *Plaintiff's Statement of Maternal Facts,* ¶ 33 (Docket No. 66).

Plaintiff alleges that he has a qualifying disability because of his loss of two fingertips on his right hand. *Id.* at ¶ 37. Plaintiff alleges that as a result of the confiscation of his typewriter, he had to handwrite court documents. *Id.* at ¶ 38. He also alleges he was prejudiced because his papers were handwritten. *Id.* Plaintiff alleges that "the sole reason for confiscation of his typewriter was the violation of the rules against bartering, and that Defendants knew or should have known that Plaintiff was disabled." *Id.* at ¶ 39. Plaintiff admits that he is able to write legibly and carry on with all of life's normal functions despite having lost two fingertips. *Plaintiff's Deposition*, 110:7 - 113:18 (Docket No. 46-14).

**MEMORANDUM DECISION AND ORDER- 23**

2.     <u>Due Process - Liberty Interest Analysis</u>

Plaintiff received sixty (60) days of commissary restriction and forty (40) extra duty hours for his bartering DOR.  Using the *Sandin* standard set forth above, the Court finds that Plaintiff has failed to show that he suffered a significant or atypical hardship in relation to the normal incidents of prison life.  Therefore, he may not pursue a due process claim.

3.     <u>Due Process - Some Evidence Standard</u>

Plaintiff's own admissions provided ample evidence that the DOR was justified.  Therefore, Defendants are entitled to summary judgment on Plaintiff's due process claim that he was found guilty without evidence or in an arbitrary and capricious manner.

4.     <u>Equal Protection</u>

Plaintiff admits that he has no evidence showing that he was treated differently from other bartering inmates at ICC.  Therefore, his equal protection claim fails.

5.     <u>Access to Courts</u>

Plaintiff has not shown that he suffered a detrimental ruling in any of his cases by the confiscation of his typewriter.  Defendant Acosta advised him to use a pen and paper.  Pens and paper are available to indigent inmates for access to courts purposes.  Using a pen and paper may have been more difficult for Plaintiff as a result of his finger issue, but there is no evidence in the record that Plaintiff cannot use a pen and paper to access the courts, as the majority of inmates do.

6.     <u>Freedom of Speech</u>

Bartering clearly does not constitute protected speech under the *Turner* standard.  The prison has banned bartering because it "affects the safe and orderly administration of the

**MEMORANDUM DECISION AND ORDER- 24**

institutions and raises safety and security concerns." *Burnett Affidavit*, ¶ 8 (Docket No. 46-10); *see also Affidavit of Phillip Valdez*, ¶¶ 4-13 (Docket No. 46-11).  In particular, bartering allows inmates to obtain benefits he is not otherwise entitled to, allows them to gain advantage and power over other inmates, and subjects them to potential harm where bartering deals go awry. *Id*.

Applying the *Turner* factors, first, the Court finds that the Property Directive has a rational connection to the identified problems associated with bartering.  Second, indigent inmates are supplied with the necessities of life free of charge in prison, and inmates with funds in their accounts have an opportunity to purchase additional items through the commissary, providing them with an alternative means of obtaining the necessities of life and other supplies. As to the remaining *Turner* factors, bartering has enough ill effects that prisoners have no right to barter, they need no alternative forum provided to them in which to barter in prison, and inmates' desire to barter need not be accommodated.  *See Turner v. Safley*, 482 U.S. at 89-90. Inasmuch as Plaintiff has plainly admitted that he was bartering legal services for commissary items, he has no grounds for an "as-applied" challenge to the Property Directive.  As a result, Defendants are entitled to summary judgment on this claim.

      7.    <u>Cruel and Unusual Punishment</u>

Plaintiff's lack of a typewriter does not meet any standard for cruel and unusual punishment under the Eighth Amendment.  To state a claim under the Eighth Amendment, a plaintiff must show that he is incarcerated "under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citation omitted).  A plaintiff must also

**MEMORANDUM DECISION AND ORDER- 25**

show that Defendants were deliberately indifferent to plaintiff's needs.  Deliberate  indifference

exists when an official knows of and disregards an unconstitutional condition or when the

official is aware of facts from which the inference could be drawn that a risk of harm or violation

exists, and actually draws the inference.  *Farmer v. Brennan,* 511 U.S. at 837.

Plaintiff's circumstance did not pose a risk of serious harm or deprive him of any of life's

necessities.  Nor has he shown that officers intended to detriment his ability to communicate in

writing by enforcing the rules against bartering.  As a result, Defendants are entitled to summary

judgment on this claim.

8.    Plaintiff's ADA and RA Claims

Plaintiff alleges that the confiscation of his typewriter amounted to violations of the

Americans with Disabilities Act (ADA)[1] and the Rehabilitation Act (RA).[2]  Title II of the ADA

applies to a "qualified individual with a disability who with or without reasonable modifications

to rules, policies, or practices, . . . meets the essential eligibility requirements for the receipt of

services or the participation in programs or activities provided by a public entity."  42 U.S.C. §

12131(2).  The Supreme Court has held that the plain language of Title II of the ADA extends to

prison inmates who are deprived of the benefits of participation in prison programs, services, or

activities because of a physical disability.  *See Pennsylvania Dept. of Corrections v. Yeskey*, 524

U.S. 206, 211 (1998).  The term "public entity" includes "any department, agency, special

---

[1]Americans with Disabilities Act of 1990, § 1, *et seq*, as amended, 42 U.S.C. §12101, *et seq*. (Title I), § 2132, *et seq*. (Title II), §12181, *et seq*. (Title III).

[2]Rehabilitation Act of 1973, § 504, as amended, 29 U.S.C. § 794, *et seq*.

**MEMORANDUM DECISION AND ORDER- 26**

purpose district, or other instrumentality of a State or States or local government." *Id*.[3]  Title II

of the ADA has recently been upheld as a valid abrogation of state sovereignty "insofar as Title

II creates a private cause of action for damages against the States for conduct that *actually*

violates the Fourteenth Amendment."  *United States v. Georgia*, 546 U.S. 151, 159 (2006)

(emphasis in original).

In order to proceed with an ADA claim, Plaintiff must show (1) that he has a disability;

(2) that he is otherwise qualified to participate in or receive a public entity's services, programs

or activities; (3) that he was denied the benefits of the services, programs or activities, or was

otherwise discriminated against by the public entity; and (4) that such exclusion, denial of

benefits, or discrimination was by reason of the plaintiff's disability.  *Weinreich v. Los Angeles*

*County Metropolitan Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).  A "disability" must fit

one of three definitions under 42 U.S.C. § 12102(2) to be actionable under the ADA:  there must

be "(A) a physical or mental impairment that substantially limits one or more of the major life

activities of [an] individual; [or] (B) a record of such an impairment; or (C) being regarded as

having such an impairment."

For example, walking is considered a major life activity.  *Bragdon v. Abbott*, 524 U.S.

624 (1998) (quoting 45 C.F.R. § 84.3(j)(2)(ii)).  In addition to showing that Plaintiff has an

impairment that affects a major life activity, he must show that the limitation on the major life

---

[3]  In *Jensen v. Lane County*, 222 F.3d 570 (9th Cir. 2000), the Ninth Circuit held that a
private physician and non-profit health care corporation's provision of health care to the county
detention facility could be construed as the actions of the state.  *See also McNally v. Prison*
*Health Services*, 46 F. Supp. 2d 49, 58 (D. Me. 1999)(holding that Title II ADA claim could go
forward to trial against a private, for-profit prison medical provider).

**MEMORANDUM DECISION AND ORDER- 27**

activity is substantial.[4]  *Colwell v. Suffolk County Police Department*, 158 F.3d 635, 641 (2d Cir. 1998); *see also Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1025 (5th Cir. 1999) (although plaintiff wore corrective shoes for a deformity in her leg and foot, she was not substantially limited in the major life activity of walking); *Penny v. United Parcel Service*, 128 F.3d 408, 415 (6th Cir. 1997) (moderate difficulty or pain experienced while walking does not substantially limit the life activity of walking).

Under Title II of the ADA, plaintiffs may not sue individual defendants in their individual capacities, but must instead sue the state or state entities.  *See Lollar v. Baker,* 196 F.3d 603, 610 (5th Cir. 1999) (citing *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1010-11 (8th Cir.1999) (the ADA's comprehensive remedial scheme bars the plaintiff's  claims against the commissioners in their individual capacities); *Baird v. Rose*, 192 F.3d 462, 471 (4th Cir. 1999) (Title II of the ADA does not recognize a cause of action for discrimination by private individuals, only public entities); *compare Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1188-87 (9th Cir. 2003)(holding that Title II's statutory language does not prohibit a plaintiff from requesting injunctive action against state officials in their official capacities).

The ADA and RA are congruent statutes in purpose and application.  *See Clark v. California*, 123 F.3d 1267, 1270 (9th Cir. 1997).  The evidence required for bringing an RA claim is the same as that for an ADA claim with the additional requirement that the disability discrimination be committed by an entity receiving Federal financial assistance.  *See* 29 U.S.C. § 794.  Therefore, analysis of Plaintiff's ADA claim in this Order also applies to his RA claim.

---

[4] The cases brought under Title II of the ADA use the disability definitions found in federal regulations promulgated for Title I, governing disability discrimination in the employment area.

**MEMORANDUM DECISION AND ORDER- 28**

Plaintiff's ADA and RA claims against Defendants in their official capacity fail for the following reasons. First, Plaintiff has not shown that he has a qualifying disability. He has not shown that the fact that he has two missing fingertips substantially limits one or more major life activities. In addition, he was not denied the opportunity to access the courts; rather, he was specifically advised to use an acceptable alternative method -- a pen and paper. Second, having a personal typewriter is not a "service, program, or activity" regularly provided to inmates by the prison. Finally, confiscation of his typewriter had nothing to do with his alleged disability; instead, it was for Plaintiff's violation of the Property Directive. As a result, Plaintiff's ADA and RA claims are subject to summary judgment. For the same reasons, the Court finds, and thus concludes, that Plaintiff has stated no ADA or RA claim with his allegations that officers confiscated his Colgate toothpaste, VO5 shampoo, dandruff shampoo, Baby Magic lotion, and Irish Springs soap, items received from bartering his legal services.

> 9.      Personal Property Deprivation

The random negligent or intentional unauthorized deprivation of property by state officials does not state a cognizable cause of action under § 1983 if the plaintiff has an adequate state post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986); *Taylor v. Knapp*, 871 F.2d 803, 805-06 (9th Cir. 1989), *cert. denied*, 493 U.S. 868 (1989). An adequate state post-deprivation remedy is available for such claims in this state under the Idaho Tort Claims Act, enacted to provide redress for citizens injured by the tortious acts of governmental entities, officials and employees.[5]

---

[5]  Idaho Code §§ 6-901 through 6-929 (ITCA).

**MEMORANDUM DECISION AND ORDER- 29**

However, deprivations of property which have occurred as a result of "an affirmatively established or de facto policy, procedure, or custom, [and] which the state had the power to control," are actionable under the Due Process Clause. *Abbott v. McCotter*, 13 F.3d 1439, 1443 (10th Cir. 1994) (internal citation omitted); *San Bernardino Physicians' Services Medical Group, Inc. v. San Bernardino County*, 825 F.2d 1404, 1410 n.6 (9th Cir. 1987) (where there has been alleged "planned, non-random behavior on the part of the state . . . a section 1983 case for violation of due process may lie without regard to, or use of, the state's postdeprivation remedies.").

Prison officials have a right to confiscate certain types of prisoner personal property, such as: (1) items which are contrary to reasonable prison rules and regulations; (2) items which may compromise the security of inmates, officers or the public; and (3) items which may threaten other legitimate penological interests. *See, e.g., Harper v. Wallingford*, 877 F.2d 728, 733 (9th Cir. 1989) (prison officials may confiscate written materials promoting sexual relationships between adult males and juvenile males because the materials pose a threat of violence in the prison and impede prisoner rehabilitation); *Mauro v. Arpaio*, 188 F.3d 1054, 1063 (9th Cir. 1999) (prison officials may confiscate sexually explicit materials in order to protect female correctional officers from sexual harassment).

Prisons must "provide appropriate procedural protections when taking [inmates'] property -- with or without compensation" in order to satisfy due process. *Vance v. Barrett*, 345 F.3d 1083, 1089 (9th Cir. 2003). In *Stewart v. McGinnis*, 5 F.3d 1031 (7th Cir. 1993), the court determined that "[d]ue process requires that [the inmate] have a meaningful opportunity to be heard on the issue of whether the [item] was contraband." *Id*. at 1037.

**MEMORANDUM DECISION AND ORDER- 30**

Judgments regarding prison security "are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Pell v. Procunier*, 417 U.S. 817, 827 (1974).

Here, Plaintiff had a meaningful opportunity to be heard on whether his typewriter was contraband. Plaintiff plainly admitted that his typewriter was used in bartering transactions. He had a DOR hearing, had a chance to use the grievance procedures, and had notification of and an opportunity to choose among options for the disposition of his typewriter.

Defendants followed the correct procedures prior to destroying Plaintiff's typewriter. Pursuant to the Property Directive, Defendants informed Plaintiff that he had forty-five (45) days to determine whether he wanted his typewriter sent to an outside party or donated to a charity. He was aware at that time that his failure to make such a designation would result in the destruction of his property. Also pursuant to the Property Directive, the prison allowed Plaintiff to complete the grievance procedure before making any disposition of his typewriter. Defendant Blakely went the extra mile of determining whether the prison could pay the cost of sending the typewriter out in a circumstance where the inmate was indigent. Blakely received a negative answer, and informed Plaintiff that he would have to send it out at his own expense. When Plaintiff failed to inform Blakely of his decision, the typewriter was destroyed. Based on the foregoing, the Court finds that Defendants have shown that they provided him with adequate due process regarding his confiscated typewriter. Finally, there is no respondeat superior liability under § 1983, and, therefore, Plaintiff's "supervisory" claim fails. *See Taylor v. List*, 880 F.2d

**MEMORANDUM DECISION AND ORDER- 31**

1040, 1045 (9th Cir. 1989).  As a result, Defendants are entitled to summary judgment on this claim.

**E.     Plaintiff's Placement in Segregation in December 2004**

Plaintiff alleges that Defendants placed him in segregation in December 2004 in retaliation for filing grievances; Defendants allege that they placed him in segregation for investigatory purposes.  The following facts are material to this claim.

1.     <u>Material Facts</u>

On December 9, 2004, ICC settled a case with an inmate, Jesse Stover, who had alleged that he had been injured by an ICC correctional officer.  *Affidavit of Jeff Conway*, ¶ 3 (Docket No. 46-12).  On or about December 13, 2004, Warden Conway received a handwritten letter from an inmate informing him that he had heard that Plaintiff and two other inmates were going to help Stover "set up" an officer so that he could pursue a new retaliation claim against ICC.  *Id*. at ¶ 4.  The letter appeared credible because it contained confidential details about the settlement conference between Stover and ICC.  *Id*. at ¶ 5.  Conway considered this a threat to institution safety and security, and, as a result, he ordered that Stover, Plaintiff, and the two other inmates be placed in pre-investigation segregation.  *Id*. at ¶¶ 7-8.  Conway considered the segregation necessary, because it was not known when the alleged set up would occur.  *Id*. at ¶ 8.  After the inmates had been placed in segregation, Defendants performed an investigation.  The investigation failed to produce facts to substantiate the allegations, and the inmates were returned to the general population on December 30, 2004.  *Id*. at ¶ 9.

Plaintiff had met Stover after the incident that was the subject of the settlement conference and had helped him "a little bit" with an immunity issue on appeal on the case in

**MEMORANDUM DECISION AND ORDER- 32**

question.  *Plaintiff's Deposition*, 116:1-18; 118:2-14 (Docket No. 46-14).  Plaintiff later refused

to help Stover, and Stover had become angry with him.  *Id.* at 119:1-12.

    2.  <u>Retaliation</u>

    A retaliation claim must allege the following: "(1) An assertion that a state actor took

some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and

that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the

action did not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d

559, 567-68 (9th Cir. 2005).  A "chilling effect on First Amendment rights" is enough to state an

injury.  *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001).  The law is also clear that where

there is "some evidence" to support a prisoner's reclassification under the standard set forth in

*Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, and where

reclassification served a legitimate penological purpose, a prisoner's retaliation claim fails.

*Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994).

    Here, Plaintiff alleges that Defendants retaliated against him by placing him in

investigative segregation because they were angry that he had filed grievances.  However,

Defendants have shown that placing Plaintiff in segregation was for a legitimate purpose.  An

independent informant inmate had implicated Plaintiff in the Jesse Stover conspiracy.

Defendants interrogated Plaintiff about the Jesse Stover incident.  Plaintiff admitted to having

helped Jesse Stover in some of his litigation, but not regarding the original incident from which

the lawsuit arose or in the alleged scheme to set up an officer.  Defendants determined that

Plaintiff had not acted wrongfully, and he was released from segregation thereafter.

Accordingly, because there was a legitimate penological purpose for Plaintiff's placement in

**MEMORANDUM DECISION AND ORDER- 33**

segregation pending investigation and Defendants have met the "some evidence" standard,

Plaintiff's claim fails, and Defendants are entitled to summary judgment.

## III.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED as follows:

A.    Defendants' Motion for Summary Judgment (Docket No. 46) is GRANTED as to all

claims except for the following claims, for which summary judgment is conditionally

denied: Plaintiff's claim that the December 14, 2003, DOR was retaliatory, and Plaintiff's

claim that he was found guilty of the December 14, 2003, DOR because of retaliation

rather than any evidence.  Plaintiff shall have an additional sixty (60) days to engage in

any follow-up discovery on Defendants' responses to the requests for admissions.  Within

ninety (90) days, Plaintiff shall file a final supplemental response to the Motion for

Summary Judgment, providing facts showing that there is a genuine issue of material fact

on the remaining claims.  The Court shall then reconsider the remaining claims.  If

Plaintiff believes that his new evidence bears on any other claims already disposed of, he

may, in a brief and concise manner, ask for reconsideration of this Order.

B.    Plaintiff's Motions for Leave to File an Overlength Response (Docket No. 67) and an

Overlength Supplemental Response (Docket No. 81) are GRANTED;

C.    Plaintiff's Motion to Amend Amended Complaint (Docket No. 68) is GRANTED;

D.    Plaintiff's Motion in Limine (Docket No. 69), treated as a Rule 56(f) motion, is

GRANTED to that extent set forth above;

E.    Defendants' Motion for Extension of Time to File Reply (Docket No. 72) is GRANTED;

**MEMORANDUM DECISION AND ORDER- 34**

F.     Defendants' Second Motion for Leave to File Excess Pages (Docket No. 74) is

       GRANTED;

G.     Defendants' Motion to Withdraw Admissions (Docket No. 76) is MOOT; and

H.     Plaintiff's Requests to Supplement Subpoena Responses (Docket Nos. 78 & 80) are

       DENIED.



DATED:  **September 21, 2007**.

Honorable Larry M. Boyle
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER- 35**